Good morning ladies and gentlemen. We are pleased to have District Judge Stantmiller of the Eastern District of Wisconsin sitting with us today. Welcome. Thank you. Our first case for argument this morning is United States v. Faulkner v. Sykes. Mr. Greenberg. Good morning, your honors. Good morning, Sean. This is an odd case to say the least because Mr. Faulkner was prosecuted in 2011. At that time he gave a full confession to the authorities, to the agents, and they utilized that statement to then go out and get overhear orders. Based on information they got in those overhears, they then prosecuted Mr. Faulkner as part of a larger RICO and drug conspiracy a couple of years later. The evidence against Mr. Faulkner was the exact same, except for statements that were permitted by the district court, and the district court was heard as a bench trial, statements that were permitted by the district court under the co-conspirator hearsay exception. The problem with that, and I don't think I've ever had a case where all the issues are so intertwined, so my argument will be a little bit all over the place for that reason, but the problem with that was that the hearsay statements that were admitted, if they were proper co-conspirator statements, and we certainly don't think they were, were made after Mr. Faulkner had already withdrawn from the conspiracy. Why do I say that? You have something of a problem because the district court made a finding of fact that Mr. Faulkner had not withdrawn from the conspiracy. Well, the district court didn't... Is that finding clearly erroneous? It is. It is. It was not... That has to be the burden of your argument. Okay. I can focus on that. The withdrawal cases talk about what is involved, and one of the times when someone withdraws is when they make a full statement to the authorities, they recount their activities, and then they cease any contact with the people who they previously conspired with, and that's exactly what happened here. The government tried to claim at trial that, and this is why it's clearly erroneous, that Mr. Faulkner had continued to control, for at least a period of months, the drug trade that was going on on the street. Now, in this building, typically in a case, you've got wiretaps, you've got phone records, you've got all sorts of things. Well, here they had all of that, but they had none for Mr. Faulkner. Mr. Faulkner was locked up in a federal jail and then a state jail that they were sending federal prisoners to, and according to the evidence in the case, they had scoured his phone records, and they had never found evidence of a single phone call from Mr. Faulkner to anybody who was involved in the conspiracy. The only witness who the government presented that claimed that Mr. Faulkner had ever called was a gentleman whose name was Pitts. Mr. Pitts was not involved in the conspiracy when Faulkner was out on the street. Mr. Pitts was living elsewhere, and he came back after Faulkner was arrested. So there's no way that Faulkner would have known his number, and Pitts testified he and Faulkner didn't get along. So there's no reason Faulkner would have called him. That was the only evidence that was out there that said that Mr. Faulkner ever did anything, and some double and triple hearsay that was admitted where someone said that Mr. Faulkner said that I'm eating by still doing stuff on the block. No recording of that call. Someone said that Faulkner's steady calling the block, which means that he's calling all the time. No evidence of that. It was, as we've detailed, we were put in the position of an argumentum ad ignorantum, which is trying to prove something doesn't exist because there's no evidence that it does exist, which is a very, very difficult proposition. But since he withdrew from the conspiracy, and the district court did not consider that until it was brought up after the district court had made their findings, and the district courts essentially said it doesn't really make any difference, does it? That was the comment that was made by the district court. So what's the prejudice, counsel? The district court said that, right, in saying I don't know that I would reach a different conclusion if I didn't consider the post-withdrawal statements, even assuming you're right, even assuming you're right. The problem was that all of the evidence to support the conspiracy charge and almost all the evidence to support the drug conspiracy and almost all the evidence to support the RICO conspiracy came from these statements. The only other evidence was Mr. Faulkner's statement that he had made when he was arrested in 2011, and nothing that he talked about factually in that statement was introduced into evidence. In other words, there was a statement without any meat to it. There was no evidence that he had been seen out on the block put into it. There was no evidence that he had provided drugs to anyone put in or anything like that. So if he withdrew, then none of the other statements that came in were properly admitted as co-conspirator statements, and there was then no proof that he was involved in the drug conspiracy. The only other evidence on the RICO conspiracy was this shooting where, again, I believe that the district court was clearly erroneous in their finding, and I know that factual findings of district court as to whether or not someone is guilty of a crime are entitled to this extreme sense of deference, but this is the one case, perhaps, that this court should look back at the transcript because you had an individual who testified whose testimony was clearly contradicted not only by the physical evidence, not only by the laws of physics, meaning he couldn't have traveled where he said he traveled to get a gun, not only by the fact that he got what the government characterized as a phenomenal deal, not only by the fact that he couldn't remember when he ever came to this building to talk to anyone, but also by the video evidence. The shooting that Mr. Faulkner was found to be partly responsible for was 10 minutes after a fight took place between two individuals, yet the only witness to testify that Mr. Faulkner was involved in that shooting testified how they drove 50 minutes round trip to get a gun, and he was all over the place on where they got the gun, and he was all over the place on how they got the gun and when he got the gun, and then he testified to returning the gun to Mr. Faulkner or Mr. Green, but Mr. Green was in the custody of the Chicago police, having been arrested fleeing from the scene of the shooting, so that could not have taken place. He testified to some entirely nonsensical story about what happened in terms of that shooting, and this is the extreme case. Otherwise, the court should just enter a ruling that says you can't ever challenge reasonable doubt. The findings of a court, and this isn't a jury, this is a district court, but that the findings of a court are never challengeable, and I don't think that that's the law that should apply in any case. And it's also relevant because if the hearsay statements don't come in, and if the withdrawal took place, then in fact Mr. Faulkner has been prosecuted twice for the same acts, and I am aware that there's a difference between conspiracy and the underlying over acts. I hope you're also aware that this has also been litigated and decided. This was litigated previously, however, in Calabrese it was also litigated, and then when it went up, the Family Secrets case, when it went up on appeal the second time, the court said that had the evidence been the same evidence that had been introduced originally, it might be a different situation. I don't know how you get anywhere on that. First, this has been decided, and second, the Supreme Court has expressly rejected the same evidence approach to double jeopardy. And we're in no position to disagree with the Supreme Court. Well, if I don't raise it here, I can't try and disagree with them later, Your Honor. I happen to think... You've preserved your position for presentation in a written certiorari. Thank you, and I see I'm in my rebuttal time. Thank you. Thank you, Mr. Greenberg. Mr. Carlson. May it please the Court. My name is Kent Carlson, and I represent Otis Sykes. To a large extent, I rely on what is contained in our brief here, but I would like to briefly discuss the issue of the sentencing disparity in this case. The thing that is most troubling is that Judge Bucklow, despite having the disparity issue raised by the defense and mentioned by the government, Judge Bucklow never once mentioned disparity, much less considered the range of sentences that were imposed in this case. Well, Mr. Carlson, with all due respect, what is in the record that would reasonably support disparity other than simply parroting the words? There is nothing in the record that identifies Mr. Sykes' situation compared to those comparators that you are asking this Court, now long after the fact, to visit. Well, Judge, I think that one of the co-defendants, and I believe it was Jasmine McClain, was charged in the very same counts for the very same conduct, for the very same conspiracy that Mr. Sykes was. And did he go to trial? She did not go to trial. All right. There is one difference right there, acceptance of responsibility, maybe credit for cooperation, maybe criminal history scores may be different. That is why trial judges do not like to venture into these wicky thickets because there are too many problems. And I would agree with the Court, except that this is the same judge who had sentenced all of these people. The argument was made to her, and quite honestly she did not even cite acceptance of responsibility as a reason for any disparity. There was no discussion of disparity whatsoever. And I think that when the issue was raised by defense counsel, although not raised as one might have hoped it would be raised, I think it is a matter that the Court has to take into consideration. It is one of the factors that the statute requires the Court to consider. And I think especially when you are talking about the difference in sentencing in this case of the low street level drug dealers that rang from probation to the highest sentence that my client got at 195 months. I think when you see disparities that great, they need to be addressed. If we are going to have a situation where there is respect for the law, the variance of a sentence of 195 months I think needs to be addressed. And I would suggest that that was not done in this case. The only things that were ever mentioned as aggravating factors here were his recidivism, which is something that was already taken into consideration. And it was also taken into consideration in the sense that while he did come out and repeat the offenses again, that added up his drug quantities. So that is something that the Court already had considered. The Court doesn't say why it went from the guideline sentence to the 195-month sentence, and it didn't address why the 195-month sentence was an appropriate sentence, much less compare that to the desperate sentences that were imposed on other street-level drug dealers. For those reasons, I would ask the Court to reverse the sentence in this case. Thank you, Mr. Carlson. Any other questions? Mr. Bindi. Good morning. May it please the Court. Sufficient evidence supports Joseph Faulkner's convictions. The argument that his participation in the racketeering conspiracy is based on the shooting of Tony Carr is incorrect. The District Court found that, to a large extent, the racketeering and narcotics conspiracies coincided, and there was plenty of evidence of his involvement in the narcotics conspiracy. There was testimony at the trial from Troy Ross that the District Court running that spot from the mid-1990s through the time of his arrest in 2011. That testimony is corroborated significantly by Joseph Faulkner himself. When he was arrested and gave a statement to the authorities regarding his participation in the conspiracy, he said the same thing, that he was the ranking gang member and had been running that spot for about a 15-year span. Indeed, also in the opening statement at the trial in this case, it was said by counsel that Joseph Faulkner is a drug dealer and he ran that spot for a time. So the District Court had plenty of evidence on which to convict Mr. Faulkner on both the racketeering conspiracy and the narcotics conspiracy. Regarding the gun counts, the argument, of course, is based entirely on the testimony of Mr. Ross, and there are a lot of difficulties that have been pointed out with that testimony, as there often are in any case of this nature. But nevertheless, the essential story, the essential narrative that Ross testified to is that Faulkner wanted Carr killed. He was willing to pay money to have somebody do it. Ross volunteered to do it. Faulkner gave him the gun. He committed the shooting, and afterwards he was paid for it. There's nothing inherently incredible or contrary to the laws of physics about the essential narrative of that story, and the judge was entitled to credit it. The withdrawal argument coincides also with the sufficiency arguments, but it's really a non-starter. As the District Court found, it really didn't matter. The evidence that convicted him on the narcotics conspiracy and the racketeering conspiracy did not depend on what happened after the arrest. And the finding that he had not withdrawn is not clearly erroneous. The tape evidence of people having conversations out on the street who had no reason to lie to each other were clearly talking about the fact that there was confusion in the ranks about who was in charge of the spot. Was it Hoskins or was it Faulkner? As far as the double jeopardy argument goes, again, that is law of the case. It can be revisited if there's new evidence or new authority or if it is manifestly erroneous, and that hasn't been established here at all. With regard to Sykes' sentence, the disparity argument is the focus today and really the one thing, obviously, that stands out about Mr. Sykes in terms of the sentence and the aggravated sentence that he received was his participation in the murder of Andre Brown, which is not shared by any of the other comparators that he would have had the District Court look at. And that was a significant factor in the District Court's decision to impose the sentence that it did. And so for these reasons, we ask that this Court affirm the judgment as to both Sykes and Faulkner. Thank you. Thank you, Mr. Bindi. Anything further, Mr. Greenberg? Yes. You know, the story is the government says it's a normal story. A guy is hired to shoot somebody because someone wants him out of the way. He does the shooting. He gets paid. Sure, that's fine if that was the two-sentence story. But it was a lengthy period of testimony and nothing that was testified to, nothing that was shown, nothing that was on the videotape, nothing at all confirmed that basic statement. And that's the problem with it, and that's why I talk about the law of physics. As to the racketeering conspiracy and the narcotics conspiracy, the Court said it relied on the post-arrest statement made by Mr. Faulkner. The evidence that was recovered is resonance in 2011 when he made the post-arrest statement. Evidence of drug trafficking, all of which related to Mr. Sykes, who was not a member of the racketeering conspiracy, and related to what he had done chiefly after Mr. Faulkner had been arrested in 2011, and the testimony of Mr. Ross saying what Mr. Faulkner's activities were. That's what the district court cited. But it also clearly relied upon these statements. So if a bunch of people are saying that we don't know who's in charge, that doesn't mean that the defendant who's locked up in jail is doing anything. It may mean that those people on the street have confusion. It may mean that they feel a loyalty towards somebody. But that doesn't change the fact that Mr. Faulkner was locked up in a jail, didn't make any phone calls, isn't heard on any wiretap, and that nobody came to court except for Mr. Pitts, whose phone was tapped, by the way. Mr. Pitts claimed that that day the call had come in on some other phone. He couldn't remember whose. But it doesn't change the fact that Mr. Faulkner did nothing. And if Mr. Faulkner had withdrawn from this conspiracy, then the court's ruling is colored by all of this other evidence and influenced by all of this other evidence that was improperly admitted. In a minimum, in a minimum, Mr. Faulkner should get a new trial without all of that extraneous evidence that never should have come in because the hearsay statements were improperly admitted and he had withdrawn from the conspiracy. Your Honor, do you have a... Oh, all right. Any other questions? Thank you, counsel. Mr. Carlson, anything further? No, Your Honor. Thank you very much. The case is taken under advisement.